IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
IN ADMIRALTY

| | |
|---|---|
| KPI BRIDGE OIL, LTD., | CIVIL ACTION NO.  2:19-cv-810-MBS |
| Plaintiff | |
| v. | **VERIFIED COMPLANT** |
| M/V SOHO PRINCIPAL, IMO No. 9743239, her engines, tackle, equipment, furniture, appurtenances, etc., *in rem* | |
| Defendant | |

Plaintiff, KPI Bridge Oil Limited ("KPI"), complaining of the above Defendant *in rem*, alleges as follows:

1.      This is an admiralty and maritime claim within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333, Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, and Federal Rule of Civil Procedure 9(h).

2.      Plaintiff invokes the admiralty jurisdiction of this Honorable Court pursuant to 28 U.S.C. § 1333(1).

3.      This case is governed by the General Maritime Law of the United States, and laws supplemental thereto and amendatory thereof.

4.      Venue is proper in this District in accordance with Rule C as the M/V SOHO PRINCIPAL, IMO No. 9743239, her engines, tackle, equipment, furniture, appurtenances, etc., *in rem* (hereafter "SOHO PRINCIPAL") is or will be within the physical jurisdiction of this Court during the pendency of this action.

5.      At all material times, KPI was and is a marine management and fuel services corporation or business entity organized and existing pursuant to the laws of the Cayman Islands, with a place of business located in Grand Cayman, Cayman Islands.

6.      At all material times, defendant, the SOHO PRINCIPAL was and is, upon information and belief, a bulk cargo ship, owned by Merchant Prime Shipping III LLC, ("Merchant Prime Shipping"), and chartered to Orhan Shipping Pvt Ltd. ("Orhan Shipping").

**Unpaid Bunkers Sold and Delivered to the SOHO PRINCIPAL**

7.      KPI contracted to provide bunkers and related barging services to the SOHO PRINCIPAL in Singapore, which bunkers were initially ordered by Orhan Shipping, the charterer of the SOHO PRINCIPAL.  This contract to purchase bunkers is evidenced by a Confirmation of Order, No. UK120269, dated 08/08/2018, a true and correct copy of which is attached as Exhibit A, hereafter the "Confirmation".

8.      The Confirmation, as well as the sale and delivery of the marine fuels to the SOHO LIMITED, were subject to the Standard Terms and Conditions of Sale of Marine Fuel by KPI Bridge Oil Limited (Ltd)., a true and correct copy of which is attached as Exhibit B, hereafter "General Terms".  More specifically, the Confirmation provided in relevant part, as follows:

> Seller's terms & conditions to apply to this contract and the latest version is available from our website http://www.kpibridgeoil.com/terms-conditions/, these are an integral part of this contract.

(Exh. A, Confirmation, p. 1.)

9.      Article 1.1 of the General Terms defines the term "Buyer" to mean "the entity or entities named in the Bunker Confirmation, together with the Vessel, her master, owners, operators, charterers, any party benefitting from consuming the Bunker Fuel, and any other party ordering the Bunker Fuel."  (Ex. B, General Terms, p. 1, art 1.1.)  As discussed *infra*, on or about

August 16, 2018 the SOHO PRINCIPAL accepted marine bunkers from KPI, pursuant to the Confirmation. Accordingly, the SOHO PRINCIPAL, her owner Merchant Prime Shipping, and her charterer Orhan Shipping, fall within the definition of Buyer and are, therefore, bound and obligated jointly and severally to the Confirmation and to the General Terms, which General Terms were incorporated in the Confirmation by express reference and adoption.  See *World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co., Ltd.*, 783 F.3d 507, 518-19 (4th Cir. 2015).

10.     Article 8.2 of the General Terms provides as follows:

In the event that any invoice is not paid in due time, the Seller shall be entitled, at its sole discretion, to specify any particular invoice or part thereof to which any subsequent payment(s) shall be applied, including, but not limited to, payment covering interest charges, legal fees and other charges. Moreover, the Buyer shall indemnify the Seller against any loss which is caused by adverse currency fluctuations between the invoice currency and the value of the US Dollar from the latest due date of the invoice until the date on which payment is made.

(Exh. B, General Terms, p. 4, article 8.2.)

11.     Article 8.3 of the General Terms provides as follows:

Unless a longer or shorter period is set out in the Bunker Confirmation, payment is to be received by Seller within a period of 30 days from the date of delivery. Any delay in payment of the full sum shall entitle Seller to interest at the rate of 3 percent per month compounded unless the parties have agreed to any other specific interest rate as set out in the invoice. In addition to interest, Seller is entitled to charge a delayed payment administration fee of USD 1.50 per metric ton supplied with a minimum administration fee of USD 500 for each delivery made. All reasonable attorneys' fees incurred by the Seller in connection with the collection of overdue payments shall be for the sole account of the Buyer.

(Exh. B, General Terms, p. 4, article 8.3.)

12.     Article 8.5 of the General Terms provides as follows:

Sales shall be made on the credit of the receiving Vessel, as well as on the credit of the Buyer, and the amount due on the purchase price, together with all delivery and other charges forming part of the agreement of sale, shall become a maritime lien against the Vessel immediately upon delivery.

(Exh. B, General Terms, p. 5, art. 8.5.)

13.     Article 9.1 of the General Terms provides as follows:

The Bunker Fuel supplied to the Vessel is sold and delivered on the credit of the Vessel, as well as on the promise of the Buyer to pay therefore, and the Buyer agrees and warrants that the Seller shall have and may assert a maritime lien against the Vessel and may take such other action or procedure against the Vessel and any other vessel or asset beneficially owned or controlled by the Buyer, for the amount due for the Bunker Fuel and the delivery thereof. <u>The laws of the United States, including but not limited to the Commercial Instruments and Maritime Lien Act, shall always apply with respect to the existence of a maritime lien, regardless of the jurisdiction in which Seller takes legal action. Nothing in this Bunker Contract shall be construed to limit the rights or legal remedies that the Seller may enjoy against the Vessel or the Buyer in any jurisdiction.</u>

(Exh. B, General Terms, p. 5, art. 9.1) (emphasis added).

14.     In filing this Verified Complaint, KPI exercises its discretion to proceed against the SOHO PRINCIPAL under the substantive laws of the General Maritime Law of the United States of America as well as the Commercial Instrument and Maritime Liens Act, 46 U.S.C. §§ 31303 *et seq*. and under the procedural laws of the Federal Rules of Civil Procedure, including the Supplemental Rules for Admiralty and Maritime Claims, as well as the Local Rules of the United States District Court for the District of South Carolina.

15.     On August 8, 2018, KPI issued the Confirmation for the account of M/V SOHO PRINCIPAL and/or master and/or owner and/or charterers and/or managers and/or operators and/or Merchant Prime Shipping III LLC and/or Orhan Shipping Pvt Ltd and indicated that it would provide 460.00 metric tons of 380-CST  3.5% to the SOHO PRINCIPAL in Singapore, including associated barge service to transport and transfer the foregoing fuel bunkers to the SOHO PRINCIPAL, with an estimated delivery date of August 14-18, 2018.  (Exh. A, Confirmation, p. 1.)

16.     On August 16, 2018, pursuant to the Confirmation and the General Terms, the SOHO PRINCIPAL accepted the delivery of 460.090 metric tons of 380-CST 3.5% marine

bunkers, as evidenced by the Bunker Delivery Note, a true and correct copy of which is attached as Exhibit C *in globo*. The bunker delivery was made on behalf of KPI.

17.    KPI has paid the suppliers in full for the bunkers delivered to the SOHO PRINCIPAL in Singapore, on August 16, 2018.

18.    On August 24, 2018, KPI issued an invoice to the M/V SOHO PRINCIPAL and / or owners and / or Charterers, which was addressed to M/V SOHO PRINCIPAL and/or master and/or owners and/or charterers and/or managers and/or operators and/or Merchant Prime Shipping III LLC and/or Orhan Shipping Pvt Ltd referencing Confirmation No. UK120269, in the amount of US $221,796.89 for 460.090 metric tons of 380-CST 3.5% marine bunkers delivered to the SOHO PRINCIPAL in Singapore, to be paid on or before September 30, 2018, a true and correct copy of which is attached hereto as Exhibit D, hereafter "Invoice." As of this date, KPI has not been paid for the bunkers delivered to the SOHO PRINCIPAL in breach of the Confirmation and General Terms, and plaintiff is accordingly owed US $221,796.89 for the bunkers, fees and charges as aforesaid.

19.    Pursuant to General Terms, Article 8.3, KPI is entitled to recover contractual interest of three (3%) percent per month on the foregoing unpaid invoiced amount until paid, and a delayed payment administrative fee of US$ 1.50 per metric ton of bunkers supplied.  (Exh. B, General Terms, p. 4, art. 8.3.).

20.    Pursuant to General Terms, Article 8.3, all costs borne by KPI  in connection with the collection of overdue payments, whether made in or out of court and in general all costs in connection with breach of the contract shall be for the breaching party's sole account.  *Id*. Accordingly, KPI is additionally entitled to recover for all attorney's fees and costs incurred by KPI resulting from its efforts to collect payment on the Invoice, including attorney's fees and costs

associated with this civil action, and pursuant to the General Terms, the SOHO PRINCIPAL, Merchant Prime, and Orhan Shipping remain jointly and severally liable for all amounts due and owing to KPI.

21.     As of the date of this filing, KPI is owed the following amounts for unpaid bunkers delivered to the SOHO PRINCIPAL:

| Invoice | US | $221,796.89 |
|---|---|---|
| Accrued Interest | US | $38,818.28 |
| Administrative Fees | US | $500.00 |
| Accrued and Anticipated Attorney's Fees | US | $30,000.00 |
| **TOTAL** | **US** | **$291,115.27** |

### Request for Arrest of the SOHO PRINCIPAL
### Pursuant to Supplemental Admiralty Rule C

22.     Upon information and belief, the SOHO PRINCIPAL is or will be within this District during the pendency of this admiralty and maritime claim to recover for necessaries provided by KPI to the SOHO PRINCIPAL.

23.     Pursuant to Rule C of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, KPI is entitled to arrest the SOHO PRINCIPAL to satisfy KPI's claims, including but not limited to pre-judgment interest, costs, expenses, and attorneys' fees as alleged with more specificity *supra*.

24.     KPI agrees to release and hold harmless and indemnify the United States of America, the United States Marshal, their agents, servants, employees, and all others for whom they are responsible, from any and all liability or responsibility for claims arising from the arrest and attachment of the aforesaid SOHO PRINCIPAL.

25.    All and singular the foregoing premises are true and correct within the admiralty jurisdiction of this Honorable Court.

## PLAINTIFF'S PRAYER

**WHEREFORE**, plaintiff, KPI Bridge Oil Limited, prays:

1.    That this Verified Complaint be deemed good and sufficient;

2.    That process in due form of law, according to the rules and practices of this Honorable Court, issue against the M/V SOHO PRINCIPAL, her engines, tackle, apparel, furniture, equipment, and all other necessaries, *in rem*, by way of arrest pursuant to Supplemental Admiralty Rule C, and that all persons claiming interest in said vessel be required to appear and to answer under oath, all and singular the matters aforesaid;

3.    That after due proceedings are had, there be judgment entered in favor of plaintiff, KPI Bridge Oil Limited, and against defendant, the SOHO PRINCIPAL, her engines, tackle, apparel, furniture, equipment, and all other necessaries, *in rem*, requiring defendant to pay damages to plaintiff in the amount of US $291,115.27 for bunkers delivered to the SOHO PRINCIPAL and administrative attorney's fees associated therewith, and all other damages as may be proven at trial, with prejudgment interest, attorney's fees, *in custodial legis* expenses, and all costs of these proceedings; and

4.      That all expert fees be taxes as costs and that this Court grant KPI Bridge Oil Limited such other and further relief as may be just and proper.

Respectfully submitted:

**BLUESTEIN LAW FIRM, P.A.**

By: s/ S. Scott Bluestein
S. Scott Bluestein - Federal No. 6981
P.O. Box 22253
Charleston, SC 29413
1040 eWall Street
Mount Pleasant, SC 29464
843-577-3092 (telephone)
843-577-3093 (facsimile)
E-mail: scott@boatinglaw.us

*Attorney for KPI Bridge Oil Limited*

Of Counsel

JAMES D. BERCAW (to be admitted pro hac vice)
ROBERT J. STEFANI, JR. (to be admitted pro hac vice)
CHELSEA C. CREWS (to be admitted pro hac vice)
**KING & JURGENS, L.L.C.**
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-3800
Facsimile: (504) 582-1233
E-Mail:    jbercaw@kingjurgens.com
            rstefani@kingjurgens.com
            ccrews@kingjurgens.com

**PLEASE SERVE:**

**The Master of the M/V SOHO PRINCIPAL, IMO 9743239**
**And Issue a Warrant for the Arrest of the M/V SOHO PRINCIPAL**

{N1611883 -}                                    8